# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39539**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Camen J. SCILLUFFO**
Airman (E-2), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 4 March 2020[1]

————————————

*Military Judge:* Brian D. Teter.

*Approved sentence:* Dishonorable discharge, confinement for 24 months, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 12 January 2018 by GCM convened at Joint Base San Antonio-Lackland, Texas.

*For Appellant:* Zachary D. Spilman, Esquire (argued); Major Megan E. Hoffman, USAF.

*For Appellee:* Major Dayle P. Percle, USAF (argued); Lieutenant Colonel Joseph J. Kubler, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Judge POSCH delivered the opinion of the court, in which Chief Judge J. JOHNSON and Judge KEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

---

[1] We heard oral argument in this case on 13 August 2019.

POSCH, Judge:

Appellant was convicted contrary to his pleas at a general court-martial composed of a military judge alone of one specification of wrongful use of marijuana, one specification of sexual assault of Senior Airman (SrA) MS by penetrating her vulva with his penis when he knew or reasonably should have known that she was asleep, and seven specifications of assault consummated by a battery of SrA MS in violation of Articles 112a, 120(b)(2), and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 920(b)(2), 928.[2,3] The military judge sentenced Appellant to a dishonorable discharge, confinement for 24 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

Appellant raises seven issues on appeal: (1) whether Appellant's conviction of wrongful use of marijuana at a party to celebrate Appellant's birthday "occurring just prior to 3 August 2016" is legally insufficient because the party occurred on 5 August 2016; (2) whether the findings are factually insufficient; (3) whether the post-trial discovery that SrA MS wrongfully used cocaine and marijuana, and that she obstructed justice, was new evidence justifying a new trial; (4) whether the military judge erred when he failed to consider the defenses of self-defense and accident to seven specifications of assault consummated by a battery in Charge III; (5) whether the trial defense counsel were ineffective for agreeing with the military judge that the defense of self-defense was not reasonably raised by the evidence and by failing to defend Appellant on the basis of self-defense and accident;[4] (6) whether Specifications 3 and 4

---

[2] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[3] Appellant was found not guilty of divers use of marijuana by exceptions and substitutions in the Specification of Charge I. Appellant was also found not guilty of two other specifications of sexual assault of SrA MS, each alleging that Appellant penetrated her vulva with his finger on divers occasions in violation of Article 120(b)(2), UCMJ, 10 U.S.C. § 920(b)(2) (charged as penetration with intent to gratify Appellant's sexual desire when he knew or reasonably should have known she was asleep), and Article 120(b)(1)(B), UCMJ, 10 U.S.C. § 920(b)(1)(B) (charged as penetration by causing bodily harm with intent to satisfy Appellant's sexual desires without consent). Appellant was also found not guilty of words excepted from two specifications of assault consummated by a battery under Charge III.

[4] Appellant's statement of the issue—whether trial defense counsel were ineffective for agreeing with the military judge that self-defense was not reasonably raised by the evidence for the seven specifications of Charge III—is narrower than his brief, which claims that "Appellant's counsel were constitutionally deficient when they ignored the complete defenses of self-defense *and accident*." (Emphasis added).

and Specifications 5 and 6 of Charge III are multiplicious or an unreasonable multiplication of charges; and (7) whether the trial counsel engaged in prosecutorial misconduct by making improper arguments during findings and rebuttal argument.

We find the evidence is legally insufficient to affirm the conviction of wrongful use of marijuana in Charge I and its Specification. We thus set aside the finding of guilt for that charge and specification, dismiss the charge and specification with prejudice, and reassess the sentence. Finding no further error, we affirm the remaining convictions and the sentence as reassessed.

## I. BACKGROUND

Appellant's convictions are founded on the testimony of SrA MS, whom Appellant dated and had a sexual relationship with between May and August of 2016. SrA MS testified at trial that Appellant engaged in numerous acts of physical violence toward her as well as non-consensual sexual intercourse when she was living with Appellant at his off-base apartment in San Antonio, Texas. She also testified that Appellant smoked marijuana in his apartment.

The crux of Appellant's defense and a central point of his appeal is that SrA MS was not a credible witness and her testimony was untruthful. After trial adjourned, SrA MS twice tested positive for the presence of illegal drugs following separate collections of her urine under the base-wide inspection program administered by Joint Base San Antonio (JBSA)-Lackland, Texas. The day after the first collection, SrA MS confided in a coworker that she expected to fail the inspection and asked him not to divulge what she told him. Appellant learned of the positive drug tests and moved for a new trial on grounds that this new information was inconsistent with her trial testimony and further tarnished her credibility. The military judge denied Appellant's request, concluding that the positive drug tests did not constitute newly discovered evidence and were not grounds for a new trial.

In this appeal, Appellant contends the military judge abused his discretion in denying Appellant's request for a new trial among the other aforementioned errors Appellant assigns for review.

## II. DISCUSSION

### A. Legal Sufficiency of Charge I and its Specification

Appellant's first assignment of error challenges the verdict of guilty of Charge I and its Specification, which alleged that Appellant wrongfully used

marijuana "on divers occasions."[5] The military judge found Appellant guilty of a single use, and announced findings by exceptions and substitutions to specify which of the two uses presented by the Government had been proven beyond a reasonable doubt. Appellant challenges the legal sufficiency of his conviction on grounds that the military judge's effort to so specify is not supported by the evidence.

The military judge found Appellant guilty of using marijuana "at a party to celebrate [Appellant]'s birthday occurring just prior to 3 August 2016," during the charged timeframe of between on or about 1 July 2016 and 4 August 2016. Appellant contends his conviction is legally insufficient because the only evidence that Appellant used marijuana at a birthday party was at a party that occurred *after* 3 August 2016—on Friday, 5 August 2016—and not "just prior to 3 August 2016" as announced in findings. It follows, Appellant contends, that his conviction is legally insufficient because no rational trier of fact could have found that Appellant used marijuana "at a party to celebrate [Appellant]'s birthday occurring *just prior* to 3 August 2016." (Emphasis added). We agree.

**1. Additional Facts**

The sole evidence at trial that Appellant used marijuana was presented through the testimony of SrA MS. She described two instances when she smoked marijuana in the military, and both were shared uses with Appellant. SrA MS did not know the exact date of the first time she and Appellant used marijuana, but she recalled it was sometime before Appellant's birthday, i.e. prior to 3 August 2016. The following testimony was presented as to Appellant's first use of marijuana:

> **Q** [Trial Counsel]. Okay. So when was the first time that you used marijuana?
>
> **A** [SrA MS]. It was -- I don't have, like, a specific date for it. I just know it was before his birthday, because that was the second time, so --
>
> **Q**. And when is his birthday?
>
> **A**. August 3rd.
>
> **Q**. Of what -- okay. And so what year was this in?
>
> **A**. Two thousand sixteen.
>
> **Q**. Okay. So before August 3rd, 2016?

---

[5] As referred, Charge I and its Specification alleged that Appellant wrongfully used marijuana "at or near San Antonio, Texas, on divers occasions, between on or about 1 July 2016 and 4 August 2016."

A. Yes, sir.

SrA MS explained that she and Appellant both smoked the marijuana from the same blunt. She recognized its distinctive smell from her pre-service marijuana use and observed that Appellant "was acting giggly and different" and his eyes were red. Although the effects she experienced were minimal because she "didn't really inhale," she nonetheless stressed "[t]here was no doubt that it was marijuana" based on her experience.

SrA MS also described a second use of marijuana with Appellant at a party to celebrate Appellant's birthday. Like the first use, she and Appellant both smoked the marijuana from a blunt. Her testimony of the second use contrasted with the first in that she described the marijuana, including how it was ground and then rolled into a blunt, and the effects she felt from inhaling the smoke.

The date of the birthday party was not contested at trial, but is contested by the Government on appeal as it bears on the findings that were announced by the military judge. Appellant claims the evidence of record establishes the date of the party, and Appellant's second use of marijuana, was on 5 August 2016—the Friday after Appellant's 3 August 2016 birthday—and not before. The Government contends that the date of the party in relation to Appellant's birthday is "a bit ambiguous" because SrA MS's testimony "was unclear exactly when the party was, only that it occurred on a Friday around Appellant's birthday." As previously described, SrA MS's testimony established that Appellant's birthday was 3 August 2016, which we judicially note was a Wednesday.[6] SrA MS gave the following responses to the trial counsel's questions about the second time she and Appellant used marijuana in relation to Appellant's birthday:

> Q [Trial Counsel]. When was the second time that you smoked marijuana?
>
> A [SrA MS]. So his birthday was August 3rd, but it wasn't on his physical birthday. It was the party for his birthday, so that Friday, the -- I can't remember exactly what day his birthday fell on -- but it was the Friday.
>
> Q. Okay. So his birthday is August 3rd; the upcoming Friday is --

---

[6] A Court of Criminal Appeals may "take judicial notice of an undisputed fact or question of domestic law that is important to the resolution of an appellate issue, [but] it cannot take judicial notice of facts necessary to establish an element of the offense." *United States v. Paul*, 73 M.J. 274, 280 (C.A.A.F. 2014).

A. Yeah.

Q. -- you're having a party for his birthday?

A. Yes.

SrA MS later confirmed on direct examination by the trial counsel that the second use—at the party to celebrate Appellant's birthday—happened on Friday, the 5th of the month:

Q: Okay. So let me stop you there for a second. So this is on Friday the 5th . . . ?

A: Yes.

Q: Or whatever the day of the party is --

A: Yeah.

There was no further testimony on this issue from SrA MS. However, a witness who testified that she was at Appellant's birthday celebration, SrA KP, affirmed on cross-examination by the trial counsel, that the party "celebrating with [Appellant]" was "the Friday after [Appellant's] birthday," that is, the party occurred on Friday, 5 August 2016.

**2. Law**

A Court of Criminal Appeals may affirm only such findings of guilty "as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). This court is required to dismiss charges when we set aside findings based on a "lack of sufficient evidence in the record to support the findings." Article 66(d), UCMJ, 10 U.S.C. § 866(d).

"Article 66(c) requires the Courts of Criminal Appeals to conduct a *de novo* review of legal and factual sufficiency of the case." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted). "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of

record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

### 3. Analysis

The Government argues a reasonable factfinder could conclude from the trial testimony that Appellant used marijuana at a birthday party held before his 3 August 2016 birthday in spite of testimony that the party was after this date. It follows, the Government contends, that the military judge's finding that Appellant used marijuana "just prior to 3 August 2016" is not erroneous based on the evidence of record. Alternatively, the Government argues the date of the party is unimportant and urges us to modify the finding to indicate that the use that served as the basis for Appellant's conviction occurred at the party to celebrate Appellant's birthday—the second of two uses SrA MS testified to at trial. We are not persuaded by either contention.

We disagree with the Government's first contention that the military judge could have reached his findings of guilty based on the evidence. Viewing the testimony in a light most favorable to the Prosecution, *see, e.g.*, *Robinson*, 77 M.J. at 297–98, we find no evidence of record that Appellant used marijuana at a party to celebrate his birthday that took place before 3 August 2016 as announced by the military judge. Whether SrA MS's testimony on the issue is considered independently, or together with SrA KP's testimony, the evidence at trial established the date of the birthday party was Friday, 5 August 2016, and not earlier. Drawing every reasonable inference in favor of the Government, a reasonable factfinder would conclude that if Appellant used marijuana at a birthday party, the use occurred on Friday, 5 August 2016, and not "just prior to 3 August 2016," as found by the military judge. *See, e.g.*, *Barner*, 56 M.J. at 134. Therefore, the military judge's findings of guilty to Charge I and its Specification are deficient for "lack of sufficient evidence in the record to support the findings." *See* Article 66(d), UCMJ, 10 U.S.C. § 866(d).

The Government's second contention is essentially that the date of the party is not essential, and it urges us to modify the erroneous finding as opposed to setting it aside and dismissing Charge I and its Specification for legal insufficiency. *See* Article 66(c), (d), UCMJ, 10 U.S.C. § 866(c), (d). The Government argues the date of the party is immaterial because the record clearly supports which one of the two uses the military judge convicted Appellant of committing: the second use SrA MS described at Appellant's birthday party. The Government proposes this court except words in the specification and "change the finding to be 'on or about 5 August 2016'" to reach this end. As modified, the finding would convict Appellant of wrongfully using marijuana "at or near San Antonio, Texas, at a party to celebrate [Appellant]'s birthday occurring on or about 5 August 2016."

In support of the proposed modification, the Government notes this court has previously held that Article 66(c), UCMJ, gives us the authority to make exceptions and substitutions on appeal "so long as we do not amend a finding on a theory not presented to the trier of fact." *United States v. Hale*, 77 M.J. 598, 607 (A.F. Ct. Crim. App. 2018) (citations omitted), *aff'd*, 78 M.J. 268 (C.A.A.F. 2019); *see also United States v. English*, 79 M.J. 116, 120 (C.A.A.F. 2019) ("In performing its review under Article 66(c), UCMJ, a Court of Criminal Appeals (CCA) may narrow the scope of an appellant's conviction to that conduct it deems legally and factually sufficient." (citations omitted)). We agree that the proposed modification, if we were authorized to make it, would conform to the evidence of record, specifically, SrA MS's testimony of Appellant's second use, and would not implicate the fundamental fairness problem of convicting Appellant on a theory not presented to the trier of fact.

The problem with the Government's approach is that it overlooks the possibility that the military judge found Appellant guilty of the first use of marijuana and not the second. As announced, the finding is facially ambiguous as to which use of marijuana the military judge intended to find: the date points toward one, and the reference to a birthday party points to another. The Government's approach reveals that *Hale* is inapt because the issue is not whether both alleged uses were presented to the trier of fact—they were. Instead, the issue is that the date when Appellant may have used marijuana is an essential element of the offense because it was used to differentiate guilty from not guilty conduct. Thus, it is not possible to modify the erroneous finding in this case unless this court were authorized to choose which of the two uses served as the basis for Appellant's conviction, and it follows, which use was the basis for the acquittal. The Government claims "the record clearly supports which occasion the military judge convicted Appellant of—the use at his birthday party." However, we are not similarly convinced that this court has the authority to resolve uncertainty in an erroneous verdict by weighing the evidence as the Government would have us do.

In *United States v. Seider*, No. ACM 35154, 2003 CCA LEXIS 197 (A.F. Ct. Crim. App. 11 Aug. 2003) (unpub. op.) (per curiam), *rev'd in part*, 60 M.J. 36 (C.A.A.F. 2004), this court erred by doing just that in a case where a verdict was not erroneous as it is here, but it was similarly uncertain. Our court reviewed two alleged instances of drug use for legal and factual sufficiency. *Id.* at *1. The members found the appellant guilty of use on only one occasion.[7] *Id.* at *2. Based on the testimony of three witnesses, this court was "convinced

---

[7] The appellant in *Seider* pleaded not guilty to wrongfully using cocaine on divers occasions and was found guilty except the words "on divers occasions." *United States v. Seider*, 60 M.J. 36, 36 (C.A.A.F. 2004).

beyond a reasonable doubt that appellant used and distributed cocaine during a card game at the appellant's off base apartment." *Id.* This court concluded, "We are similarly convinced that this was the basis for the court members' finding of guilt for this specification." *Id.* In doing so, this court rejected "vague testimony" given by one of the witnesses "about one additional use of cocaine." *Id.* Subsequently, the United States Court of Appeals for the Armed Forces (CAAF) reversed our decision in part and found that it was not possible for this court to "conduct a factual sufficiency review of the conviction." *United States v. Seider*, 60 M.J. 36, 38 (C.A.A.F. 2004). This was so even though the Government argued, much as it argues in the case at hand, "that the record provides a clear, sufficient factual basis for the Court of Criminal Appeals to review the finding and resolve any ambiguity." *Id.* The CAAF noted that the failure of the verdict to identify which of the two drug uses was the basis for the conviction was a defect that could not "be resolved by weighing evidence and concluding that evidence of one use is quantitatively or qualitatively inferior." *Id.* at 38 n.*.

We conclude the findings of guilty to Charge I and its Specification are not just erroneous and legally insufficient, but the uncertainty of the verdict precludes our factual sufficiency review as in *Seider*. The issue here is the uncertainty caused by the erroneous verdict, comparable to the uncertainty in the *Seider* verdict that was ambiguous because it failed to specify which one of two alleged uses was the basis for a conviction of drug use on a single occasion, *see id.* at 38. Here, the verdict is incongruous with the evidence and inconsistent as to the date of the offense that Appellant was found guilty of committing. Thus, rather than modify the findings as the Government urges us to do, we set them aside and dismiss Charge I and its Specification with prejudice. Article 66(c), (d), UCMJ, 10 U.S.C. § 866(c), (d).[8] We address the impact of our conclusion and reassess Appellant's sentence below.

## B. Factual Sufficiency of the Findings

Appellant challenges the factual sufficiency of the findings of guilty for his sexual and physical abuse of SrA MS. We are not persuaded by Appellant's claims and conclude the convictions are factually sufficient.

### 1. Additional Background

SrA MS and Appellant were in an intimate relationship from May 2016 through August 2016. She testified Appellant sexually assaulted her during this timeframe when she lived with Appellant in his off-base apartment in San

---

[8] "[W]here the setting aside is based on lack of sufficient evidence in the record to support the findings," a rehearing on findings is not authorized. Article 66(d), UCMJ, 10 U.S.C. § 866(d).

Antonio, Texas. Among numerous clashes in their relationship, SrA MS described how Appellant would wake her up wanting "morning sex," which he knew she did not want for hygiene reasons and because she would rather sleep.[9] SrA MS testified to an incident of waking up to find Appellant penetrating her vulva with his penis. She "was sleeping on [her] stomach" and "woke up to . . . a piercing pain" and then realized Appellant's "genital was already in [her]." She explained that her "body wasn't physically ready to accept him" and that Appellant's penis at least partially penetrated her vagina in this effort. When she was more fully awake SrA MS "pushed him off," they "started arguing and, then, [she] tried to go back to sleep, but [she] couldn't, and [she] . . . eventually woke up and just . . . started the day."

SrA MS testified to several incidents of assault consummated by a battery Appellant committed during the relationship. These incidents occurred in private, and no eyewitness corroborated SrA MS's account of Appellant's application of force or her physical injuries, which SrA MS claimed she at times reported or showed to others. The Government introduced evidence that provided some corroboration of her testimony including a text message Appellant sent to SrA MS stating he would "get help" after she admonished Appellant for hitting her "again." The Government also introduced photographs of bruises that SrA MS took herself, as well as a note that accompanied flowers Appellant sent to SrA MS at her work, stating, "I'm Sorry. I Promise It Won't Happen Again." SrA MS reported the abuse when her supervisor saw she was visibly upset at work and asked her what was wrong.

The crux of Appellant's defense at trial and his main contention on appeal is that SrA MS was not a credible witness and her testimony was untruthful. The Defense elicited inconsistent statements from SrA MS on cross-examination and challenged her about her truthfulness on multiple occasions. SrA MS described an incident of physical abuse in Appellant's bedroom that she recalled happened in June 2016 when Appellant flipped her body causing her to hit her head on the metal frame of his bed. A witness for Appellant testified that Appellant did not own a bed frame until mid-July and prior to that slept on a mattress placed directly on the floor. SrA MS described another incident in Appellant's bedroom when Appellant kicked her "full on us[ing] every muscle in his body to straight kick [her] in the chest," then "kick[ed] [her] back very hard . . . maybe 20 times," and then whipped her with clothes hangers leaving "one massive laceration across [her] thigh." A responding police officer called to investigate a complaint that a male and female were arguing, testified that

---

[9] In SrA MS's own words, she was "annoyed and angry" because it was "a constant fight" and "a frequent argument" owing to "[Appellant] not understanding that I don't want to have sex in the morning."

SrA MS was wearing "shorts and a small T-shirt," and he could see her arms, legs, and face and observed no injuries or other signs of violence or struggle. Among the more significant inconsistent statements was SrA MS's account to an investigator to whom she reported Appellant's physical abuse that there was no sexual abuse in the relationship. The trial counsel called five witnesses to give favorable opinions of her character for truthfulness. In response, the Defense called four witnesses to give their opinion that SrA MS was untruthful and had a character for exaggeration.

The military judge convicted Appellant of sexual assault of SrA MS by penetrating her vulva with his penis when he knew or reasonably should have known she was asleep, as charged in Specification 1 of Charge II. The military judge also convicted Appellant of assault consummated by battery of SrA MS, as charged in Specifications 1–7 of Charge III after excepting words from two of the specifications.

### 2. Law

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *Washington*, 57 M.J. at 399 (citation omitted). Our assessment is limited to the evidence produced at trial. *Dykes*, 38 M.J. at 272 (citations omitted). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are ourselves] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399).

As charged in Specification 1 of Charge II, the military judge convicted Appellant of sexual assault of SrA MS in violation of Article 120, UCMJ. Appellant's conviction required the Government to prove the following elements beyond a reasonable doubt: (1) that Appellant committed a sexual act upon SrA MS by causing penetration, however slight, of her vulva with his penis; (2) that SrA MS was asleep; and (3) that Appellant knew or reasonably should have known that SrA MS was asleep. *See Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*), pt. IV, ¶ 45.b.(3)(e).

The military judge also convicted Appellant of assault consummated by a battery of SrA MS in violation of Article 128, UCMJ. The charged incidents of physical assault were alleged in seven specifications under Charge III. In order for the military judge to find Appellant guilty, the Government was required

to prove the following elements beyond a reasonable doubt: (1) Appellant did bodily harm to SrA MS, and (2) the bodily harm was done to SrA MS with unlawful force or violence by throwing her onto her back with his hands; pushing her against a wall and dragging her across the floor with his hands; striking her in the chest and back with his foot; striking her on the leg with a hanger; striking her on the forearm with his elbow; squeezing her on the face with his hands; and throwing her onto the floor with his hands and striking her on the face with his hand. *See* 2016 *MCM*, pt. IV, ¶ 54.b.(2). To constitute an assault, the act "must be done without legal justification or excuse and without the lawful consent of the person affected." *Id*. ¶ 54.c.(1)(a). "'Bodily harm' means any offensive touching of another, however slight." *Id*.

### 3. Analysis

The evidence of guilt in the instant case is not overwhelming, but it is nonetheless convincing beyond a reasonable doubt. SrA MS's credibility and truthfulness at trial were central issues in the case. Although evidence adduced at trial cast doubt about SrA MS's perception and recollection of a particular incident, when an incident happened in relation to other events, and the amount of force Appellant used, we find her testimony generally to be credible on the elements of the offenses of which the military judge found Appellant guilty. Photographs taken by SrA MS of her bruises and Appellant's text messages provided corroboration for some of the assault consummated by a battery offenses. We considered the evidence produced at trial and are convinced the Government overcame Appellant's claims that SrA MS fabricated claims of sexual and physical abuse for revenge or to mitigate her own misconduct.

Having weighed the evidence in the record and made allowances for not having personally observed the witnesses, we conclude the evidence is factually sufficient and are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Therefore, we find Appellant's convictions of Specification 1 of Charge II and Specifications 1–7 of Charge III factually sufficient.

### C. Request for New Trial

Appellant contends the military judge abused his discretion in denying Appellant's motion for a new trial on grounds that after his trial adjourned, SrA MS used marijuana and cocaine and obstructed justice by asking an Airman to whom she made admissions about her post-trial drug use to keep her disclosure in confidence. We are not persuaded that the military judge abused his discretion.

### 1. Additional Background

As discussed earlier, SrA MS testified that she used marijuana only twice during her military service and that both times were shared uses with Appellant. She affirmed on cross-examination by the Defense that she "didn't want to smoke marijuana, but that [Appellant], basically, forced [her] to." She was familiar with marijuana, having used it prior to joining the Air Force, and knew that she could be punished by the military for wrongful use of marijuana.

On 10 April 2018, almost three months after Appellant was convicted, SrA MS provided a urine sample for inspection testing as part of the JBSA-Lackland Drug Demand Reduction Program. The sample she gave tested positive for marijuana. A second urine sample she gave on 23 April 2018 again tested positive for marijuana[10] and a metabolite of cocaine as well. Describing the failed drug tests as "newly discovered evidence," on 1 May 2018 the trial defense counsel moved the military judge to convene a post-trial Article 39(a), UCMJ, session to determine whether grounds existed to order a new trial. *See* Rule for Courts-Martial (R.C.M.) 1102(b)(2). The trial counsel opposed the motion.

The military judge convened a post-trial Article 39(a) session on 10 May 2018. In addition to considering the positive drug tests, the military judge considered an affidavit from SrA CW who related a conversation he had with SrA MS on the day after her first urine sample was collected. SrA CW relayed that SrA MS admitted to him that she had smoked marijuana on the morning of the collection. The affidavit detailed that SrA MS asked him "to please keep the conversation in private," and she later sent SrA CW a text message "saying don't say anything and to pretend that conv[ersation] never happened." Because SrA MS's truthfulness at trial was a central issue in the case, Appellant asked the military judge to either enter findings of not guilty to all charges and specifications or to order a new trial.

The military judge denied the Defense's request in a written ruling, concluding *inter alia* that the post-trial positive drug tests were not newly discovered evidence within the meaning of R.C.M. 1210(f)(2)(A) because they occurred after trial. And further, even if they were "newly discovered," they would not have substantially changed the outcome of Appellant's trial. The military judge's ruling did not address Appellant's assertion that SrA MS obstructed justice by asking SrA CW to keep her disclosure of recent drug use in confidence.

---

[10] SrA MS's first urine sample tested positive for tetrahydrocannabinol, the active ingredient of marijuana, at a concentration of 22 ng/ml. Her second urine sample tested higher at 151 ng/ml. The confirmation cutoff for reporting a positive test was 15 ng/ml.

**2. Law**

We review a military judge's denial of a motion for a new trial for an abuse of discretion. *See United States v. Webb*, 66 M.J. 89, 92 (C.A.A.F. 2008) (citation omitted). A military judge abuses his discretion by denying a request for a new trial on the basis of newly discovered evidence "if the findings of fact upon which he predicates his ruling are not supported by evidence of record; if incorrect legal principles were used by him in deciding this motion; or if his application of the correct legal principles to the facts of a particular case is clearly unreasonable." *United States v. Williams*, 37 M.J. 352, 355–56 (C.M.A. 1993) (citations omitted)*; see also United States v. Meghdadi*, 60 M.J. 438, 441 (C.A.A.F. 2005) (quoting *Williams*, 37 M.J. at 356).

In deciding whether to grant a request for a new trial, a military judge should use "the criteria delineated in Article 73, UCMJ, 10 U.S.C. § 873, and R.C.M. 1210(f)," *Williams*, 37 M.J. at 356 (footnote omitted), for "newly discovered evidence or fraud on the court-martial," R.C.M. 1210(f)(1). *See also* Article 73, UCMJ, 10 U.S.C. § 873. A new trial may not be granted based on newly discovered evidence unless: (1) "[t]he evidence was discovered after the trial;" (2) "[t]he evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and" (3) "[t]he newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused." R.C.M. 1210(f)(2)(A)–(C). A new trial may not be granted based on fraud on the court-martial "unless it had a substantial contributing effect on a finding of guilty or the sentence adjudged." R.C.M. 1210(f)(3). "'[R]equests for a new trial . . . are generally disfavored,' and are 'granted only if a manifest injustice would result absent a new trial . . . .'" *United States v. Hull*, 70 M.J. 145, 152 (C.A.A.F. 2011) (quoting *Williams*, 37 M.J. at 356).

**3. Analysis**

We find the military judge did not abuse his discretion by failing to order a new trial. Appellant has not shown that the events upon which he based his request for a new trial—SrA MS's illegal drug use after Appellant's trial, the reporting of her positive drug tests, and her request of a friend to keep in confidence her disclosure to him of her own recent drug use—"would probably produce a substantially more favorable result" for Appellant. *See* R.C.M. 1210(f)(2)(C); *Williams*, 37 M.J. at 356.

SrA MS testified on cross-examination that her shared use of marijuana with Appellant was somehow "forced" by him. Appellant's trial adjourned on 12 January 2018. All the events that serve as the basis for Appellant's request for a new trial happened between 10 and 23 April 2018, after sentencing. Even if we were to agree with Appellant's characterization that the events show SrA

MS was a routine, and, by inference, willing drug user after Appellant's trial, the events are marginally relevant to show that she had not been forced by Appellant to use drugs: the charged timeframe that captured SrA MS's testimony of shared use of marijuana with Appellant was "between on or about 1 July 2016 and 4 August 2016"—approximately 20 months earlier. Nor has Appellant shown how positive drug tests in April may bear upon her character for truthfulness at Appellant's trial.

We similarly find that the request SrA MS made of SrA CW to keep in confidence her disclosure to him of her own recent drug use was peripheral to her credibility and truthfulness when she did testify. Appellant has not shown SrA MS's effort to dissuade a friend from revealing her admission to drug use after Appellant's trial in the light of all the evidence—including favorable and unfavorable evidence of SrA MS's character for truthfulness that was already before the factfinder—would probably produce a substantially more favorable result for Appellant. The military judge did not abuse his discretion in denying Appellant's motion for a new trial.

## D. Self-Defense and Accident

In his fourth assignment of error, Appellant claims the military judge erred by failing to consider the possibility that Appellant acted in self-defense and that the evidence raised the defense of accident when Appellant allegedly committed the offenses of assault consummated by a battery against SrA MS. In a fifth and related assignment of error, Appellant claims his trial defense counsel were ineffective for agreeing with the military judge that the defense of self-defense was not reasonably raised by the evidence and for failing to defend Appellant on these bases. We are not persuaded the military judge erred or that Appellant's counsel were ineffective.

### 1. Additional Background

At the close of evidence, the military judge discussed with counsel whether any defenses were raised with respect to the seven specifications of assault consummated by a battery under Charge III. Even though Appellant elected a judge alone trial where there were no members to instruct, the military judge nonetheless inquired of both counsel whether he should consider any defenses during his deliberations.

The military judge asked counsel if he should consider the defense of self-defense, and counsel for both sides responded in the negative, ultimately agreeing that self-defense was not reasonably raised by the evidence. Initially, the trial defense counsel hesitated to agree. However, when the inquiry turned to consideration of the testimony on the assault consummated by a battery specifications, the military judge commented, "[t]here wasn't testimony [that raised self-defense] with respect to any of the specific specifications." Trial defense

counsel responded that he "d[id ]n[o]t think that was reasonably raised." Neither party requested the military judge consider the defense of accident, and the military judge gave no indication whether he would consider it.

Consistent with this colloquy, Appellant did not defend the case on the basis of either self-defense or accident. Instead, Appellant defended on the theory that the Government failed to prove its case beyond a reasonable doubt because SrA MS as the victim and sole eyewitness to the charged offenses was not a credible witness and her trial testimony was untruthful.

In response to Appellant's claims of ineffective assistance of counsel, we ordered and received declarations from Appellant's trial defense counsel, Major (Maj) SV and Maj SH. Maj SV explained "[i]t was defense's position that [SrA MS's] account of the alleged abuse was simply false–literally that she was making up the events entirely," and so the Defense undertook to demonstrate "numerous inconsistencies and outright lies the complainant told throughout the case." The Defense's strategy, according to Maj SH's declaration, was not just to discredit SrA MS but also "to ensure we did not invite the finder of fact to give [SrA] MS's versions of events any credibility." Maj SH explained, "[i]f we argued for consideration of the affirmative defense of self-defense, we would have invited the finder of fact to credit portions of [SrA] MS's testimony as fact instead of fabrication. This would have been extremely detrimental to our theory of the case."

### 2. Law

#### a. Self-Defense and Accident

Self-defense is an affirmative defense to a charge of assault consummated by a battery, *see generally* R.C.M. 916(a) and Discussion, and has three elements. First, the accused must have had a reasonable belief that physical harm was about to be inflicted on him; second, the accused must have believed that the amount of force he used was required for protection against bodily harm; and, third, the force used by the accused must have been "less than force reasonably likely to produce death or grievous bodily harm." *See* R.C.M. 916(e)(3)(A)–(B). The right to self-defense is lost "if the accused was an aggressor, engaged in mutual combat, or provoked the attack which gave rise to the apprehension, unless the accused had withdrawn in good faith after the aggression, combat, or provocation and before the offense alleged occurred." R.C.M. 916(e)(4). However, an accused who starts an affray is entitled to use reasonable force in self-defense to defend against an opponent who escalates the level of the conflict. *United States v. Dearing*, 63 M.J. 478, 484 n.24 (C.A.A.F. 2006) (citations omitted).

Accident is also an affirmative defense to assault consummated by a battery, *see generally* R.C.M. 916(a) and Discussion,[11] and has three elements. First, there must be evidence "that the accused was engaged in an act not prohibited by law, regulation, or order;" second, the lawful act must be shown to "have been performed in a lawful manner, i.e., with due care and without simple negligence; and" third, it must be shown that "this act was done without any unlawful intent." *United States v. Arnold*, 40 M.J. 744, 745–46 (A.F.C.M.R. 1994) (citing *United States v. Van Syoc*, 36 M.J. 461, 464 (C.M.A. 1993)); *see also* R.C.M. 916(f) ("A death, injury, or other event which occurs as the unintentional and unexpected result of doing a lawful act in a lawful manner is an accident and excusable.").

In a trial before members, a military judge's duty to *sua sponte* instruct on the defense of accident or self-defense is not determined by the defense's theory, but instead by whether the defense is reasonably raised by the evidence. *United States v. McMonagle*, 38 M.J. 53, 58 (C.M.A. 1993) (accident); *United States v. Curtis*, 1 MJ 297, 298 n.1 (C.M.A. 1976) (self-defense). The test for whether a defense is "reasonably raised" is if the record contains some evidence to which the members may attach credit if they so desire. *McMonagle*, 38 M.J. at 58 (quoting *United States v. Simmelkjaer*, 40 C.M.R. 118, 122 (C.M.A. 1969)). Because the defenses of accident and self-defense each involve several elements of proof, "the record must contain some evidence on each of these elements before the military judge is required to instruct the members on it." *United States v. Ferguson*, 15 M.J. 12, 17 (C.M.A. 1983) (accident); *see also United States v. Schumacher*, 70 M.J. 387, 389–90 (C.A.A.F. 2011) (self-defense). If raised by the evidence, the prosecution has the burden of proving beyond a reasonable doubt that the defense does not exist. R.C.M. 916(b)(1).

### b. Waiver

In *United States v. Weinmann*, 37 M.J. 724, 727 (A.F.C.M.R. 1993), this court held that where "an instruction on self-defense is affirmatively waived by the defense, the issue is waived on appeal unless failure to give the instruction constituted plain error." We reached our holding in reliance on decisions by our superior court in *United States v. Taylor*, 26 M.J. 127 (C.M.A. 1988), *overruled in part by United States v. Davis*, 76 M.J. 224 (C.A.A.F. 2017), and *United States v. Steinruck*, 11 M.J. 322 (C.M.A. 1981), among others. Some years later and contrary to our decision in *Weinmann*, the CAAF reached a

---

[11] *See also United States v. Curry*, 38 M.J. 77, 80 (C.A.A.F. 1993) ("Accident, while loosely called an 'affirmative defense,' is more accurately a 'substantive law defense which negatives guilt by cancelling out' one or more *mens rea* components." (citation omitted)).

different conclusion, rejecting plain error review and concluding its "jurisprudence allows affirmative waiver of affirmative defenses." *United States v. Gutierrez*, 64 M.J. 374, 376 n.3 (C.A.A.F. 2007) (finding an appellant waived a mistake of fact instruction to the offense of assault consummated by a battery by defense counsel's statement, "I simply do not want to request one."). In so concluding, the majority opinion noted that its prior decisions in *Taylor* and *Steinruck* upon which the *Weinmann* decision relied "do not require that affirmative waiver of affirmative defenses be disallowed." *Id.* The CAAF concluded that an appellant can affirmatively waive an instruction on an affirmative defense that is reasonably raised by the evidence. *Id.* at 376 (citing *United States v. Barnes*, 39 M.J. 230, 233 (C.M.A. 1994) (finding the appellant affirmatively waived his right to an instruction on the affirmative defense of mistake of fact)). The CAAF further elaborated, "In making waiver determinations, we look to the record to see if the statements signify that there was a 'purposeful decision' at play." *Id.* at 377 (citing *United States v. Smith*, 50 M.J. 451, 456 (C.A.A.F. 1999)).

Because our holding in *Weinmann* is contrary to the CAAF's decision in *Gutierrez*, we conclude *Weinmann* does not represent the law of this jurisdiction and has been overruled. Therefore, following our superior court's precedent in *Gutierrez*, the governing standard we follow is that an appellant can affirmatively waive an instruction on an affirmative defense that is nonetheless reasonably raised by the evidence. For a waiver to be effective, it must be clearly established that an appellant intentionally relinquished a known right. *See United States v. Davis*, ___ M.J. ___ , No. 19-0104, 2020 CAAF LEXIS 76, at *7 (C.A.A.F. 12 February 2020) ("By expressly and unequivocally acquiescing to the military judge's instructions, Appellant waived all objections to the instructions, including in regards to the elements of the offense." (citations and internal quotation marks omitted)).

### c. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution[12] guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). Accordingly, we "will not second-guess the strategic or tactical decisions made at trial by defense counsel," *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (quoting *United States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001)), and we consider

---

[12] U.S. CONST. amend. VI.

"whether counsel's performance fell below an objective standard of reasonableness," *United States v. Gutierrez*, 66 M.J. 329, 331 (C.A.A.F. 2008) (citations omitted).

We review allegations of ineffective assistance of counsel de novo. *United States v. Gooch*, 69 M.J. 353, 362 (citing *Mazza,* 67 M.J. at 474). "To prevail on an ineffective assistance claim, the appellant bears the burden of proving that the performance of defense counsel was deficient and that the appellant was prejudiced by the error." *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland*, 466 U.S. at 698). We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?

> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?

> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Gooch,* 69 M.J. at 362 (alteration in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

**3. Analysis**

We examine the discussion on the record after both parties rested their cases and find no error to correct on appeal.

When asked whether self-defense was raised by the evidence, the trial defense counsel replied he "d[id] n[o]t think that was reasonably raised." We find this statement was a "purposeful decision" to forgo defending Appellant on the basis of self-defense and find that Appellant affirmatively waived our consideration of the defense on appeal. *See Gutierrez*, 64 M.J. at 377. Nonetheless, the CAAF has recognized the service courts of criminal appeals' unique mandate under Article 66, UCMJ, 10 U.S.C. § 866, to "assess the entire record to determine whether to leave an accused's waiver intact, or to correct [an] error." *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) (citation omitted). We find no reason to pierce Appellant's waiver in this case. No evidence suggested that Appellant reasonably thought SrA MS was about to inflict bodily harm upon him or that the force Appellant used was necessary for his protection. Self-defense simply was not in issue given the facts of this case.

Neither party requested the military judge consider the defense of accident, and the military judge gave no indication that he believed the defense of accident was raised by the evidence. We conclude that accident was not raised by

the evidence in this case. The defense of accident arises from an unintended consequence. There is no evidence that the consequence of Appellant's behavior toward SrA MS was unexpected or unintended. Under any standard of review, Appellant's claim that the military judge failed to consider that the evidence raised the defense of accident is without merit.

The Government's theory at trial was that Appellant was the sole aggressor, and Appellant's theory was that none of the incidents of assault consummated by a battery happened at all. The trial defense counsel directed their effort at showing that SrA MS was not a credible witness and her testimony was untruthful. They did not defend Appellant on the basis of self-defense or accident to avoid having the factfinder credit portions of SrA MS's testimony as fact instead of fabrication. The trial defense counsel's explanation of the defense strategy included reasonable considerations that we will not second-guess, *see Mazza*, 67 M.J. at 475, and so we reject Appellant's claims that his counsel were ineffective or somehow deficient in their representation. While Appellant's appellate counsel may have chosen a different findings strategy, it does not mean that the strategy used at trial was objectively unreasonable. We evaluate trial defense counsel's performance not by the success of their strategy, but rather by whether the counsel made reasonable choices from the alternatives available at trial. *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001) (quoting *United States v. Hughes*, 48 M.J. 700, 718 (A.F. Ct. Crim. App. 1998)). We find that they did, and therefore conclude that Appellant was not denied effective representation in findings under applicable standards of review.

## E. Multiplicity and Unreasonable Multiplication of Charges

On appeal, Appellant contends that Specifications 3 and 4 and Specifications 5 and 6 of Charge III, are separately multiplicious as paired—a claim he raises for the first time on appeal—and renews his objection at trial that Specifications 3 and 4 are an unreasonable multiplication of charges. Appellant also claims Specifications 5 and 6 are an unreasonable multiplication of charges, a claim Appellant initially made in a pretrial motion and subsequently withdrew on the record. We are not persuaded by Appellant's claims.

### 1. Additional Background

Prior to trial, Appellant moved to merge all seven specifications of assault consummated by a battery under Charge III into one, arguing that the specifications were unreasonably multiplied for findings and sentencing. Observing that all seven specifications share the charged timeframe, 1 May 2016 to 1 September 2016, and coincide with the dates of Appellant's and SrA MS's re-

lationship,[13] Appellant argued that the Government unfairly "capture[d] individual instances of contact within a single fight" that occurred over the course of their four-month relationship.

The Government opposed the motion, conceding that the charging window was not further specified for each incident of physical abuse because SrA MS "is not able to remember the exact dates the abuse occurred." The Government explained that SrA MS's testimony would establish "six distinct instances" of assault consummated by a battery and acknowledged that "[S]pecifications 3 and 4 occurred on the same night." In a subsequent Article 39(a), UCMJ, session the trial counsel elaborated that the conduct underlying all seven specifications "occurred on separate days and have separate transactions, with the exception of Specifications 3 and 4," which allege Appellant struck SrA MS "in the chest and back with his foot" and then struck her "on the leg with a [clothes] hanger," respectively.

After hearing the Government's explanation on the record, Appellant withdrew his merger motion except as it pertained to Specifications 3 and 4 of Charge III. Appellant continued to argue that Specifications 3 and 4 unreasonably multiplied Appellant's culpability, a position Appellant maintains on appeal. The military judge denied the Defense's motion, ruling from the bench "[w]ith respect to Specifications 3 and 4, I find that the distinct act of picking up a weapon of sorts and using that is separate and distinct from just using *hands and fists*, and . . . in my mind, is not the same course of misconduct." (Emphasis added).[14] The military judge stated he would defer ruling on Appellant's motion to merge the seven specifications for sentencing, but did not later revisit the issue or make a ruling addressing merger for sentencing.

### 2. Law

Claims of multiplicity are reviewed de novo. *United States v. Paxton*, 64 M.J. 484, 490 (C.A.A.F. 2007) (citation omitted). A military judge's denial of relief for claims of unreasonable multiplication of charges are reviewed for an abuse of discretion. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012) (citations omitted). In the context of multiplicity and unreasonable multiplication of charges, "three concepts may arise: multiplicity for double jeopardy purposes[,] unreasonable multiplication of charges as applied to findings[, and]

---

[13] All seven specifications were charged as having occurred "within the state of Texas."

[14] Neither specification alleged Appellant struck SrA MS with his hands and/or fists. It appears the military judge meant to say that the distinct act of picking up a weapon is a separate and distinct act from just *using one's foot*, to conform to the words charged in Specifications 4 and 3, respectively, of Charge III.

unreasonable multiplication of charges as applied to sentence." *Id.; see also* R.C.M. 907(b)(3)(B) (motions to dismiss for multiplicity); R.C.M. 906(b)(12) (motions for appropriate relief for unreasonable multiplication of charges as applied to findings or sentence).

### a. Multiplicity

Multiplicity in violation of the Double Jeopardy Clause of the Constitution[15] prohibits, *inter alia*, conviction and punishment for two offenses where one is necessarily included in the other, absent congressional intent to permit separate convictions and punishments. *See United States v. Teters*, 37 M.J. 370, 376 (C.M.A. 1993); *United States v. Morita*, 73 M.J. 548, 564 (A.F. Ct. Crim. App. 2014), *rev'd on other grounds*, 74 M.J. 116 (C.A.A.F. 2015). The United States Supreme Court laid out a "separate elements test" for analyzing multiplicity issues: "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "Accordingly, multiple convictions and punishments are permitted . . . if the two charges each have at least one separate statutory element from each other." *Morita*, 73 M.J. at 564.

When an appellant does not raise multiplicity at trial, the issue is forfeited in the absence of plain error. *See United States v. Lloyd*, 46 M.J. 19, 22 (C.A.A.F. 1997) (citations omitted). Under plain error review, an appellant has the burden of showing that "(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the [appellant]." *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011). Plain error exists if the specifications are "'facially duplicative,' that is, factually the same." *Lloyd*, 46 M.J. at 23 (quoting *United States v. Broce*, 488 U.S. 563, 575 (1989)) (additional citations omitted); *see also United States v. Coleman*, 79 M.J. 100, 103 (C.A.A.F. 2019) ("[A]pplication of *Blockburger* focuses on a strict facial comparison of the elements of the charged offenses." (citation omitted)).

### b. Unreasonable Multiplication of Charges

Even if charged offenses are not multiplicious, courts may apply the doctrine of unreasonable multiplication of charges to dismiss certain charges and specifications. R.C.M. 307(c)(4) summarizes this principle as follows: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." The principle provides that the Government may not needlessly "pile on" charges against an accused. *United States v. Foster*, 40 M.J. 140, 144 n.4 (C.M.A. 1994), *overruled in part on other grounds by United States v. Miller*, 67 M.J. 385 (C.A.A.F. 2009). Our superior

---

[15] U.S. CONST. amend. V.

court has endorsed the following non-exhaustive list of factors in determining whether unreasonable multiplication of charges has occurred:

> (1) Did the [appellant] object at trial that there was an unreasonable multiplication of charges and/or specifications?; (2) Is each charge and specification aimed at distinctly separate criminal acts?; (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?; (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Quiroz*, 55 M.J. 334, 338–39 (C.A.A.F. 2001) (quoting *Teters*, 53 M.J. at 607) (internal quotation marks omitted). "These factors must be balanced, with no single factor necessarily governing the result." *United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004). "[U]nlike multiplicity—where an offense found multiplicious for findings is necessarily multiplicious for sentencing—the concept of unreasonable multiplication of charges may apply differently to findings than to sentencing." *Campbell*, 71 M.J. at 23.

When the *Quiroz* factors indicate the unreasonable multiplication of charges principles affect sentencing more than findings, "the nature of the harm requires a remedy that focuses more appropriately on punishment than on findings." *Campbell*, 71 M.J. at 23 (citing *Quiroz*, 55 M.J. at 339). In a claim regarding error in a military judge's ruling on a motion for unreasonable multiplication of charges, an appellant must show: (1) that the findings of fact upon which a military judge predicated the ruling were not supported by the evidence in the record, (2) that incorrect legal principles were used by the military judge, or (3) that the military judge's application of correct legal principles to the facts of the case was clearly unreasonable. *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

### 3. Analysis–Specifications 3 and 4

In Specifications 3 and 4, Appellant was convicted of striking SrA MS "in the chest and back with his foot," and "on the leg with a hanger," respectively. Whereas the force charged in Specification 3 was applied with Appellant's foot, the force charged in Specification 4 was applied to a different part of her body and with a clothes hanger Appellant held in his hand. Appellant has not shown that the specifications are facially duplicative, that is, "factually the same," *see Lloyd*, 46 M.J. at 23, and multiplicious as a result; each requires proof of a fact the other does not. Thus, Appellant has not met his burden of showing that

there was plain or obvious error in the military judge's failure to find Specifications 3 and 4 of Charge III multiplicious.

Appellant also claims each specification criminalizes a single and continuous course of conduct and unreasonably enhanced his culpability. We disagree. SrA MS testified that sometime in mid-July of 2016, Appellant bruised her by kicking her as she lay on the floor of Appellant's bedroom. Appellant ceased kicking her, she assumed, when "his leg got tired." Appellant then knelt down and began whipping her body with plastic clothes hangers he found scattered on the floor, which SrA MS testified resulted in a cut to her leg.

We find the military judge did not abuse his discretion in ruling that Appellant's picking up a clothes hanger and striking SrA MS with it was a "separate and distinct" act from striking her in the chest and back with his foot, despite the military judge's erroneous reference to the specification when he announced his ruling that Specification 3 alleged Appellant had used his "hands and fists." "[A] single, uninterrupted scuffle" is "substantially one transaction" and should not be made the basis for an unreasonable multiplication of charges. *United States v. Morris*, 18 M.J. 450, 450 (C.M.A. 1984) (per curiam) (citations omitted) (finding separate specifications of shoving victim "in the chest with [appellant's] hands" and then striking victim "in the forehead with [appellant's] left fist" to be an unreasonable multiplication of charges).

The facts of *Morris* are distinguishable from the case at hand. Appellant's application of force under the circumstances charged in Specification 4 involved an instrumentality that was not present in Specification 3 and resulted in a different injury and was directed to a different part of her body. Appellant ceased using his leg and foot to do harm, stopped to collect clothes hangers from the floor, and reinitiated his aggression. Appellant sufficiently ceased one means of attack and then began another that resulted in a cut to SrA MS's leg. We decline to find that the military judge abused his discretion in concluding that there was no unreasonable multiplication of charges for findings. We similarly conclude from application of the *Quiroz* factors in this judge-alone trial that Specifications 3 and 4 did not unreasonably multiply Appellant's punishment in sentencing.

### 4. Analysis–Specifications 5 and 6

In Specifications 5 and 6, Appellant was convicted of striking SrA MS "on the forearm with his elbow," and "squeez[ing her] on the face with his hands," respectively. Appellant has not shown that the specifications are facially duplicative, that is, "factually the same," *see Lloyd*, 46 M.J. at 23, and multiplicious as a result; each requires proof of a fact the other does not. Thus, Appellant has not met his burden of showing that there was plain or obvious error in the military judge's failure to find Specifications 5 and 6 multiplicious.

In a colloquy with the military judge, the trial counsel explained that the facts underlying Specifications 3 and 4 of Charge III occurred during the same incident unlike the other offenses. Appellant then withdrew his merger motion: the military judge asked if Appellant's motion "essentially was withdrawn with respect to the remaining charges and specifications?" The trial defense counsel responded in the affirmative, "Yes, Your Honor. That's correct."

In this appeal, Appellant renews his withdrawn motion made at trial that Specifications 5 and 6 criminalize a single and continuous course of conduct and that the two offenses unreasonably enhanced Appellant's culpability. We disagree because Appellant's withdrawal of his motion waives an argument based on unreasonable multiplication of charges on appeal. *See United States v. Butcher*, 53 M.J. 711, 714 (A.F. Ct. Crim. App. 2000) (citation omitted), *aff'd*, 56 M.J. 87 (C.A.A.F. 2001). In *United States v. Butcher*, 56 M.J. 87, 93 (C.A.A.F. 2001), the CAAF resolved a claim of unreasonable multiplication of charges that was raised for the first time after trial:

> On appeal, the issue of unreasonable multiplication of charges involves the duty of the Courts of Criminal Appeals to "affirm only such findings of guilty, and the sentence . . . as it . . . determines, on the basis of the entire record, should be approved." Art. 66(c), UCMJ, 10 USC § 866(c). This highly discretionary power includes the power to determine that a claim of unreasonable multiplication of charges has been waived or forfeited when not raised at trial. The lower court concluded that appellant forfeited this issue by not raising it at trial, and appellant has not demonstrated any specific circumstances that would lead us to conclude that the lower court abused its considerable discretion in the present case.

We decline to use our Article 66(c), UCMJ, power to address Appellant's withdrawn motion. Appellant's argument assumes the military judge found Appellant guilty of an incident of physical abuse in Specification 6 that occurred in propinquity with Specification 5. However, SrA MS's testimony reveals the physical abuse alleged in the specifications could have occurred during either the same incident or during a separate incident on a different day. In support of Specification 5, SrA MS testified about an incident with Appellant during their lunch break while she sat in the passenger seat of Appellant's car in the parking garage near where they worked. Appellant "elbowed" her "twice[,] really quickly, jabbing [her] left arm" and leaving a bruise. In support of the offense alleged in Specification 6, Appellant directs us to SrA MS's testimony about what she says happened next: as the two sat in Appellant's car, Appellant then used his hands to cover her nose and mouth and "squeeze[d her] cheekbones very hard" to try to stop SrA MS from yelling. SrA MS alleged

during the incident that Appellant also "grab[bed her] left shoulder" and shook her to stop her from talking.

However, SrA MS testified to a second incident that met criteria for "squeez[ing her] on the face with his hands" as charged in Specification 6. The second incident—and the one the Government maintained throughout trial was proof of the offense—occurred on a different day in Appellant's car outside his apartment and was "[s]imilar to the parking garage" incident. SrA MS testified that Appellant used his hands to cover her nose and mouth "like he did before," and she similarly alleged that Appellant "grabbed a hold onto [her] left shoulder, and [Appellant] was squeezing very hard and shaking [her] at the same time."

We find both incidents provide a factual basis for the military judge's finding that Appellant used his hands to squeeze SrA MS on the face, and support Specification 6 of Charge III. Because the military judge could have convicted Appellant of separate incidents that occurred on different days, Appellant has not shown that the facts underlying Specifications 5 and 6 were "a single, uninterrupted scuffle." *See Morris*, 18 M.J. at 450. And, because Appellant withdrew his objection to these specifications on the basis of unreasonable multiplication of charges, we cannot know if there is error—assuming error remains to correct on appeal after Appellant withdrew his objection. *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) ("[A] valid waiver leaves no error to correct on appeal." (citation omitted)). Because Appellant withdrew his objection at trial and has not shown that the military judge convicted and punished Appellant twice for "substantially one transaction," *see Morris*, 18 M.J. at 450, we will not use our Article 66(c), UCMJ, power to pierce Appellant's waiver in this case. *See Butcher*, 56 M.J. at 93. We decline to grant relief for unreasonable multiplication of charges.

**F. Challenges to the Trial Counsel's Findings Argument**

Appellant contends that the trial counsel engaged in prosecutorial misconduct during his findings argument, including rebuttal. We find the complained of portions of trial counsel's argument, none of which were objected to by trial defense counsel, and the argument as a whole do not constitute plain error.

**1. Law**

Prosecutorial misconduct and improper argument are questions of law that we review de novo. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (citing *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017)). Because there was no objection at trial we review for plain error. *See id.* (citing *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005); *Sewell*, 76 M.J. at 18). The burden of proof under plain error review is on the appellant. *Id.* (citation omitted). To prevail under a plain error analysis, an appellant must show "(1) there is error,

(2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *Id.* at 401 (quoting *Fletcher*, 62 M.J. at 179).

"The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). Not every improper comment by the prosecution is a constitutional violation. *See, e.g.*, *United States v. Webb*, 38 M.J. 62, 65 (C.M.A. 1993) (citation omitted). Instead, we evaluate the comment in the context of the overall record and the facts of the case. *Id.* (citations omitted). The United States Supreme Court has observed that "it is important that both the defendant and prosecutor have the opportunity to meet fairly the evidence and arguments of one another." *United States v. Robinson*, 485 U.S. 25, 33 (1988). A trial counsel is permitted to make a "fair response" to claims made by the defense, even where a constitutional right is at stake. *Id.* at 32.

In assessing prejudice when we find error, we evaluate the cumulative impact of any prosecutorial misconduct on an appellant's substantial rights and the fairness and integrity of his trial. *Fletcher*, 62 M.J. at 184 (citation omitted). We do so by balancing three factors: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Id.* We also recognize that the lack of defense objection is some measure of the minimal prejudicial impact of the trial counsel's argument. *Gilley*, 56 M.J. at 123 (citation omitted). In sum, our superior court has found "reversal is warranted only 'when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone.'" *Sewell*, 76 M.J. at 18 (quoting *United States v. Hornback*, 73 M.J. 155, 160 (C.A.A.F. 2014)). We can similarly apply the CAAF's measure for prejudice in *Hornback* to a trial with a military judge as the factfinder.

**2. Analysis**

In this judge-alone trial, Appellant takes issue with the overall theme of the Government's findings argument in addition to statements made by the trial counsel. Appellant contends the trial counsel improperly argued a propensity-based theme, vouched for SrA MS, and shifted the burden to Appellant to prove his innocence. We address each contention in turn.

### a. Alleged Propensity Argument

The trial counsel argued Appellant's guilt of the seven assault consummated by a battery offenses committed against SrA MS in the context of evidence of their volatile relationship. He began the Government's findings argument by stating, "'I'm 19. I don't know what to do.' That's how [SrA MS] felt;

trapped in an abusive relationship with someone that she actually cared about." His next comment, Appellant claims, launched a propensity-driven theme that the trial counsel returned to throughout the Government's argument:

> What [SrA MS] learned was that people behind closed doors are often different than the person or the perception of the relationship they gave to others.

The trial counsel went on to explain that a relationship that "started out well" and that was "exciting" initially, "started to change" and "evolve[d] into a toxic situation, based on jealousy, dependency, and control." The trial counsel explained, "They would interact, things would get physical, there would be apologies, and the cycle would eventually repeat itself." The trial counsel remarked that the way the relationship "played out in front of people, suddenly was different when they were alone." He argued that Appellant "started to become increasingly jealous of her interactions with other people." Trial counsel explained SrA MS's testimony "described a pattern [whereby] every day they had to do the same thing. [Appellant] wanted to know where she was at, [and] when she was there. They got up together, they went to work, they had lunch together, [and] they met in the stairwell." Appellant complains the trial counsel's next remark further illustrates the improper theme:

> This was a progression every day, and the control increased and increased and increased.

SrA MS's testimony established that Appellant was violent when they were alone. Trial counsel argued from this evidence that Appellant behaved differently when he and SrA MS were behind closed doors "when the physical abuse occurred." Appellant claims the trial counsel's next remark is a third illustration of a prohibited propensity theme:

> Because physical abuse—it shouldn't be shocking if physical abuse—or physical abusers would not hit someone in front of everyone in plain sight; that at the river, he wouldn't just smack her in the face. That shouldn't be surprising. Human nature is to try to conceal misconduct; not to do it out in front of everyone so you can be seen for *who you are*.

(Emphasis added). Trial counsel then described how the evidence showed that Appellant followed SrA MS "into the bedroom and shut the door. . . . because what was about to happen in there couldn't be seen in public."

In a final example, Appellant draws our attention to a statement made by trial counsel after discussing the evidence supporting one of the specifications of assault consummated by a battery. Afterward, counsel remarked, "this is

the first incident where [SrA MS] got a glimpse into what—how extensive—what type of abuse [Appellant] was capable of." Trial counsel continued,

> The first incident surely put [SrA MS] on notice that [Appellant] would be physical, but this raised the bar, and this showed her exactly *the type of person that he was*; how violent he could be.

(Emphasis added).

One theme of the trial counsel's argument was that all seven specifications of assault consummated by a battery fit a pattern of abuse in a private setting and that Appellant's offenses occurred in the context of a controlling and abusive relationship that Appellant helped foster. The theme relied on evidence of Appellant's conduct and not propensity—notwithstanding trial counsel's remark that it is human nature for offenders to endeavor to be seen for other than "who" they "are," and his statement that the first incident of abuse showed SrA MS "the type of person" that Appellant "was." We view these remarks within the context of the argument as a whole and not in isolation. *Baer*, 53 M.J. at 238 (citations omitted).

As a whole, the trial counsel advanced a simple theory of the case that was amply supported by evidence that, time and again, Appellant physically abused SrA MS when others were not around to see it—a valid contention considering the events underlying seven specifications of assault consummated by a battery against SrA MS, which the evidence showed, and the trial counsel aptly argued, happened in private on every charged occasion during their four-month relationship. Related to this conduct-based theme was evidence of the relationship itself, including evidence explaining how Appellant's conduct often crossed a threshold from verbal control to physical abuse.

SrA MS's testimony established there were no eyewitnesses to Appellant's conduct that would corroborate her account of the physical abuse.[16] The assaults often occurred when SrA MS and Appellant were alone in Appellant's bedroom. To the extent the trial counsel touched on a premise rooted in a straightforward understanding of human nature that wrongdoers may be wary of committing offenses under the watchful eye of others, we find this remark was hardly a statement of Appellant's propensity to commit the charged assault consummated by a battery offenses—counsel may ask the factfinder to

---

[16] However, with respect to Specifications 3 and 4 of Charge III, a neighbor had called the police about a possible domestic disturbance at Appellant's apartment but was not an eyewitness to the incident.

draw on ordinary human experience,[17] *see United States v. Stargell*, 49 M.J. 92, 94 (C.A.A.F. 1998) (citations omitted). Rather, in simple terms, it made clearer why Appellant's conduct on all seven occasions was unseen by others, and thus trial counsel's remarks relied on a valid inference supported by the evidence. *See id.* at 93–94 ("Counsel may refer to evidence of record and 'such fair inferences as may be drawn therefrom.'" (quoting *United States v. White*, 36 M.J. 306, 308 (C.M.A. 1993)). Trial counsel's argument also challenged a foundation of Appellant's defense that SrA MS should not be believed because no one else saw her account of what happened.

Much like the test for admissibility of evidence under Mil. R. Evid. 404(b)— "whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime," *United States v. Diaz*, 59 M.J. 79, 94 (C.A.A.F. 2003) (quoting *United States v. Tanksley*, 54 M.J. 169, 175 (C.A.A.F. 2000))—we find it instructive to evaluate whether the trial counsel's theme or a particular remark had a proper purpose other than to show Appellant acted in conformity with character. *See, e.g., United States v. Burton*, 67 M.J. 150 (C.A.A.F. 2009) (Government may not argue "similarities between a charged offense and prior conduct, whether charged or uncharged, to show modus operandi or propensity without using a specific exception within our rules of evidence, such as M.R.E. 404." (citation omitted)).

We find trial counsel's argument had ample proper purpose and disagree with Appellant's characterization of the seven specifications as "disparate allegations." That the evidence showed Appellant's seven offenses were similar, above all in the private setting in which they were committed, was permissible argument. It was a similarly permissible line of reasoning that Appellant's interaction with SrA MS on all seven occasions fit a pattern of controlling behavior and abuse. *See United States v. Moore*, 78 M.J. 868, 876 (A.F. Ct. Crim. App. 2019) (holding that evidence of controlling behavior was admissible under Mil. R. Evid. 404(b) to show motive and intent with respect to consent and mistake of fact as to consent), *rev. denied*, 79 M.J. 203 (C.A.A.F. 2019). At no time did the trial counsel eschew facts in evidence and draw parallels between unrelated wrongful acts and the charged conduct or resort to arguing that Appellant should be convicted because he fit a profile or a general criminal disposition. *See, e.g., United States v. Hogan*, 20 M.J. 71, 73 (C.M.A. 1985) ("[A]n accused must be convicted based on evidence of the crime before the court, not on evidence of a general criminal disposition." (citations omitted)).

---

[17] Trial counsel's statement reflects the reality Judge Cox observed in *United States v. Penister*, 25 M.J. 148, 153 (C.M.A. 1987) (Cox, J., concurring), about the rationalization by an accused in a guilty plea: "We should not overlook human nature as we go about the business of justice."

The trial counsel's theme obeyed a well-settled rule that a trial counsel "may strike hard blows, [but] he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935). Appellant has not shown error that is plain or obvious. *See Andrews*, 77 M.J. at 401.

### b. Alleged Improper Vouching for SrA MS

A trial counsel impermissibly vouches for evidence in argument "when the trial counsel 'places the prestige of the government behind a witness through personal assurances of the witness's veracity.'" *Fletcher*, 62 M.J. at 180 (quoting *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993)) ("trial counsel repeatedly vouched for the credibility of the Government's witnesses and evidence," for example by couching a conclusion with '*we know*.'"). "Improper vouching can include the use of personal pronouns in connection with assertions that a witness was correct or to be believed." *Id.* (citation omitted).

Appellant claims the trial counsel interjected his personal views to vouch for the evidence. The first example Appellant gives is the trial counsel's alleged assurance of the absence of a motive for SrA MS to fabricate the allegations she made against Appellant. Trial counsel argued:

> [T]he first thing to think about, Your Honor, is that [SrA MS] doesn't have a motive to fabricate this. She doesn't have any reason to get on this stand, going on [two] years after this happened, and commit perjury while looking at you and telling you things that didn't happen.

Another example Appellant gives is trial counsel's remarks about SrA MS's credibility that were made in reference to a conversation she had with her supervisor. The supervisor encouraged SrA MS to be forthcoming about Appellant's conduct and to reveal the identity of Appellant's supervisor so that his leadership could help. SrA MS testified she initially withheld information about Appellant's conduct from her supervisory chain because she was concerned that revealing his actions would impact her career.[18] Trial counsel accurately recited evidence of how SrA MS came forward with the allegations of physical abuse after her supervisor learned about her broken phone. The trial counsel then argued SrA MS did not lie to get Appellant in trouble, which Appellant asserts was another instance of improper vouching:

> Your Honor, if [SrA MS] was trying to manipulate the situation, was trying to plan how to get the accused in trouble, she would have to be the most manipulative criminal with the farthest forethought that can be imagined. I mean, she would have had to

---

[18] The supervisor testified SrA MS was worried "if I tell on him, he'll tell on me."

> have thought, "How do I get to my supervisor to get her to ask me questions that will lead me to answer coyfully about what's going on, so I can slowly piece information out, so it looks like I'm not as manipulative, so it looks like it's being pieced out in the time, so I'm not trying to just get him in trouble." But that didn't happen, Your Honor, because that's not what she was trying to do. It's the human reaction when confronted with what's happening. She was withholding, she was scared, she was nervous. He had videos on her, he had pictures.[19] She didn't want that out in the world. She didn't want to get in trouble. But as [SrA MS's supervisor] started to pull this out of her, she realized that what was going on with them wasn't sustainable, and [SrA MS] needed to open up. And so [SrA MS] eventually said, "Okay, I'll tell you what happened," and she did.

(Footnote added).

A third example Appellant gives is the trial counsel's rebuttal argument that Appellant's claims amounted to a factually unsupported, counterintuitive theory to explain SrA MS's suspicious demeanor on the witness stand:

> Your Honor, defense counsel asked you to look at the demeanor of [SrA MS] as she testified. . . . Your Honor, there is no right way for a victim of any type of assault to act. People react different ways to everything.

We do not agree with Appellant that the trial counsel engaged in improper vouching. In the absence of liberal use of personal pronouns as was the case in *Fletcher*, or clear departure from the evidence on which a findings argument must be founded, we cannot conclude, as Appellant contends we should, that Appellant relied on improper personal assurance to make his points as a substitute for evidence and inferences from the evidence which are permitted.

An attorney's statements that indicate his opinion or knowledge of the case "are permissible if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence. . . . In general, an attorney may not inject into his argument any extrinsic or prejudicial matter that has no basis in the evidence." *United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978) (citations omitted); *see also United States v. Rivas*, 493 F.3d 131, 137 (3d Cir. 2007) ("[A] prosecutor may urge that a witness is trustworthy by arguing from record evidence; vouching occurs only where the prosecutor implicitly refers to information outside the record." (citations omitted)); *United States v.*

---

[19] SrA MS testified she was worried about reporting Appellant because he "was blackmailing" her with "videos of [her] marijuana use" and videos of them together sexually.

*Beaman*, 361 F.3d 1061 (8th Cir. 2004) ("Improper vouching occurs when a prosecutor refers to facts outside the record, implies that the witness's testimony is supported by facts not available to the jury, gives an implied guarantee of truthfulness, or expresses a personal opinion regarding witness credibility." (citation omitted)); *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) ("[I]mproper vouching involves . . . comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." (citation omitted)).

We examine each of the claimed instances of improper vouching in turn. The trial counsel's remark that SrA MS "doesn't have a motive to fabricate" her testimony has support in counsel's next remark that there was no reason for her to lie about something that happened two years earlier. Even if one might question the remark's persuasiveness or counsel's reasoning, it does not follow that an arguably poorly-made point amounts to improper vouching.[20]

Similarly, the trial counsel's argument that SrA MS was not manipulative or "trying to plan how to get the accused in trouble" is supported by evidence of record that SrA MS was reticent to reveal information to her supervisor out of concern that she herself would get in trouble. The trial counsel lent support to this line of reasoning by remarks he made immediately before he discussed the manipulation remark that Appellant finds concerning; he argued that the evidence showed that SrA MS:

> didn't run to [her supervisor] and say, "I need to talk to you right now." She didn't run to her first sergeant, she didn't call [the Air Force Office of Special Investigations], [and] she didn't call Security Forces. She was talking to a co-worker about a broken phone; "How do I fix this?" That's how this came to light. And [her supervisor] inserted herself into the situation. She saw it and something didn't seem right when [her supervisor] said, "Let me see your phone. This doesn't happen by just dropping it. What really happened?" She pressed [SrA MS], because she knew something wasn't right.

Likewise, trial counsel's argument that SrA MS initially withheld information from her supervisor because she was "scared" and "nervous," was not a personal assurance because there was ample evidence in the record to support

---

[20] The trial counsel's argument about lack of motive was responsive to the Defense's opening statement given after the Government rested its case that "[t]his case is about motive, bias, and opportunity." The Defense explained that the evidence in its case would show that "if [SrA MS is] mad with someone, she is capable of making their lives [sic] a living hell." The trial counsel is permitted to argue reasonable inferences from evidence.

the argument, even if the evidence was contested. Trial counsel's very next comment—that Appellant "had videos on her, [and] he had pictures"—provided factual support from the testimony of record to explain why SrA MS had not reported Appellant's conduct earlier, and why she may have been scared and nervous when she did. Finally, trial counsel's argument why SrA MS reported Appellant's conduct when she did—in his words, because "she realized that what was going on with them wasn't sustainable"—tracked closely with SrA MS's testimony that she "didn't leave" Appellant because "he was blackmailing" her with "videos of [her] marijuana use," and she was worried about getting in trouble herself.

Trial counsel's rebuttal argument that "there is no right way for a victim of any type of assault to act," though it did not reference any evidence of record, was in response to trial defense counsel's argument that SrA MS's demeanor while testifying was not the "demeanor of a battered girlfriend or a battered spouse." Thus, the remark was not a personal assurance of fact from outside the record, but a common sense "fair response" to trial defense counsel's claim that SrA MS should not be believed because she appeared cold and calculating on the witness stand instead of cowering in fear.[21] *See Robinson*, 485 U.S. at 32. The notion that everyone is unique and that people respond differently is well within the knowledge and experience of a factfinder.

Appellant has not shown error that is plain or obvious. *See Andrews*, 77 M.J. at 401.

### c. Alleged Burden Shifting to Appellant

The Government always has the burden to produce evidence on every element and to persuade the factfinder of guilt beyond a reasonable doubt. *United States v. Czekala*, 42 M.J. 168, 170 (C.A.A.F. 1995) ("The Due Process Clause of the Fifth Amendment to the Constitution requires the Government to prove a defendant's guilt beyond a reasonable doubt." (citation omitted)). This burden never shifts to the defense and the Government "may not comment on the failure of the defense to call witnesses." R.C.M. 919(b), Discussion; *see United States v. Mobley*, 31 M.J. 273, 279 (C.M.A. 1990) (citation omitted). A trial

---

[21] The trial defense counsel argued:

> [W]hat is her demeanor like when she's walking the court through these events? Detached, cold, clinical, smug, arrogant. Not crying as she's reliving and being revictimized by [Appellant] during this court-martial. It was just the opposite. And when she talked about [Appellant], did she have the demeanor of a battered girlfriend or a battered spouse who can't even look at her former abuser without cowering in fear? She looked at [Appellant] like he was about 2 inches tall; that he was nothing to her; some loser; that she was above him.

counsel's suggestion that an accused may have an obligation to produce evidence of his own innocence is "error of constitutional dimension." *United States v. Mason*, 59 M.J. 416, 424 (C.A.A.F. 2004) (citation omitted).

"A constitutional violation occurs only if either the defendant alone has the information to contradict the government evidence referred to or the [members] naturally and necessarily would interpret the summation as comment on the failure of the accused to testify." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (quoting *United States v. Coven*, 662 F.2d 162, 171 (2d Cir. 1981)) (internal quotation marks omitted). Additionally, "[u]nder the 'invited response' or 'invited reply' doctrine, the prosecution is not prohibited from offering a comment that provides a fair response to claims made by the defense." *Id.* (citation omitted).

Appellant claims the trial counsel shifted a burden to Appellant to show that text messages introduced in the trial counsel's case were unreliable when trial counsel argued that the Defense failed to present evidence to prove that SrA MS manipulated text messages she gave to military law enforcement. As background to this contention, SrA MS told investigators that she had information on her personal cell phone that would support her complaints of assault consummated by a battery by Appellant. An investigator told SrA MS to provide the information to authorities; SrA MS subsequently provided screenshots she had taken of text messages between her and Appellant, as well as photographs of her injuries and other information.

Trial counsel introduced the screenshots, which included messages that SrA MS explained were exchanged shortly after an incident of physical abuse. SrA MS initiated the conversation by texting Appellant, "You [j]ust hit me AGAIN wtf is wrong with you[?]" Several texts later, and after SrA MS confirmed that she wanted to break up with Appellant, Appellant asked if she would change her mind if he would "get help" followed by the assertion, "[l]et me get help." Trial counsel used later texts in the same thread to show how Appellant exerted control in the relationship.[22]

At trial, Appellant presented the expert testimony of a digital forensic examiner about the possibility SrA MS may have tampered with the text messages by deleting texts that may have been exchanged before and after the ones admitted in evidence. During cross-examination by the trial counsel, the expert affirmed "there's no indication . . . that anything was deleted," and he was unaware if SrA MS had the required "skills . . . to modify those [screenshots]."

---

[22] A portion of 23 unanswered texts Appellant sent in succession to SrA MS read: "Please answer me," "I can't do this," "Please stop," "Don't," "Give me a chance," "Please," "Please . . . see me," "Please answer me," "I'm all alone," "I'm glad [you're] ok[ay] with me like this," "I'm in so much pain," and "I need to talk to [you]."

Trial counsel relied on the expert's testimony when he argued the following in his findings argument:

> And as [the Defense's expert] told you, there is no evidence what-soever that these [text messages] are tampered with in any way, except just mere speculation that because she's, somehow, jilted, she must have went through and manipulated these text messages and, then, committed perjury on the stand, without any evidence.

The Defense argued the opposite of trial counsel's contention, flatly stating that SrA MS in fact "surgically removed isolated text messages and, then, took a screenshot . . . with the goal of making [Appellant] look as bad as possible."[23] In his rebuttal argument, trial counsel argued SrA MS was no less credible as a witness, or untruthful, for having done "exactly what the investigators told her to do. She took pictures of certain text messages and sent them. . . . Your Honor, it can't be held against her that she did exactly what she was asked to do."

Appellant argues on appeal that the trial counsel shifted the burden to Appellant to prove his innocence not just by arguing that there was no evidence SrA MS tampered with her text messages, but also by unfairly suggesting that the trial defense counsel "was somehow disparaging [SrA MS]" when the Defense "highlight[ed] weaknesses in the prosecution's evidence and demand[ed] that the prosecution actually prove Appellant's guilt beyond a reasonable doubt."

Appellant's contention that the trial counsel improperly shifted the burden of proof to Appellant on either point is not supported by the record. As to Appellant's first point, the trial counsel's remark was firmly grounded in the evidence of record and did not shift the Government's burden. The Defense's expert witness testified he found "no indication" that any of SrA MS's text messages had been deleted, which was contrary to the trial defense counsel's tenuous accusation that she did manipulate texts on her phone. It follows the trial counsel's argument that there was "no evidence" SrA MS had tampered with evidence was supported by the expert's testimony and was thus proper.

---

[23] Trial defense counsel was unequivocal in his charge, arguing not that it was possible SrA MS tampered with the text messages; rather, "that's exactly what happened." He continued:

> Any of us could do that. If you give me a thousand text messages from anybody about the most innocuous things, I can surgically remove certain ones and make that person look bad, especially if my only goal -- my stated goal -- is to do just that. And that was her goal.

As to Appellant's second point, the trial counsel's remark made during rebuttal that "it can't be held against" SrA MS that she provided text messages from her phone, was in direct response to the Defense's argument that the very evidence SrA MS relied on to corroborate her testimony of abuse were text messages and other information that she herself gave to investigators. Considering the remark in its proper context—that it was the investigators, and not SrA MS, who caused the Government to obtain evidence in the way that it did—we have no difficulty finding that the trial counsel did not cross an impermissible line and shift the Government's burden to Appellant.

The record does not support a conclusion that the military judge as the factfinder naturally and necessarily would interpret any of the trial counsel's remarks as a comment on the failure of Appellant to testify or produce evidence of his innocence that could only come from Appellant. *See Carter*, 61 M.J. at 33. Nor does the record show that the trial counsel made impermissible comments in response to claims made by the Defense. *Id.*

After evaluating the entirety of trial counsel's findings argument including rebuttal, we find no plain or obvious error that prejudiced Appellant. *See Andrews*, 77 M.J. at 401. Even if the trial counsel had erred, a military judge as a factfinder is presumed to know the law and apply it correctly, filtering out objectionable material to reach a proper outcome, "absent clear evidence to the contrary." *United States v. Rodriguez*, 60 M.J. 87, 90 (C.A.A.F. 2004) (citation omitted). Appellant has not shown, and we do not find, any evidence to the contrary or that the cumulative impact of any claimed error prejudiced Appellant. *See United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011) (citation omitted). We decline to grant Appellant relief on the basis of prosecutorial misconduct and improper argument.

**G. Sentence Reassessment**

Because we set aside and dismiss Charge I and its Specification, we next consider whether we can reassess the sentence. We have "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 13 (C.A.A.F. 2013) (citation omitted). The CAAF has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error . . . ." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). Thus, our analysis is based on a totality of the circumstances with the following as illustrative factors: dramatic changes in the penalty landscape and exposure, the forum, whether the remaining offenses capture the gravamen of the criminal conduct, whether significant or aggravating circumstances remain admissible and relevant, and "whether the remaining offenses are of the type that [we as appellate judges] should have the experience and familiarity with to reliably determine what

sentence would have been imposed at trial." *Winckelmann*, 73 M.J. at 15–16 (citations omitted). We find the factors weigh in favor of reassessment rather than rehearing.

We can reliably determine Appellant would have received a sentence of at least a dishonorable discharge, confinement for 22 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. We are mindful there has been a slight change in the sentencing posture of this case, with the setting aside of Appellant's conviction for using marijuana on one occasion, no change in the number of victims, nine convictions reduced to eight, and the maximum sentence to confinement of 35 years and six months reduced by 2 years. Appellant's conviction for sexual assault remains the most serious offense of which Appellant was found guilty and included a mandatory minimum sentence of a dishonorable discharge. While the dismissal of Charge I and its Specification creates a slight difference in what would be an appropriate punishment, the remaining offenses of sexual assault and assault consummated by a battery are of the type that we have experience and familiarity with as appellate judges to determine the sentence that would have been imposed.

We also conclude that the reassessed sentence is appropriate. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006) (citing *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A 1988); *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982)), *aff'd,* 65 M.J. 35 (C.A.A.F. 2007). We are convinced that the reassessed sentence is not inappropriately severe.

### III. CONCLUSION

The findings of guilty of Charge I and its Specification are **SET ASIDE** and Charge I and its Specification are **DISMISSED WITH PREJUDICE**. We reassess the sentence to a dishonorable discharge, confinement for 22 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The remaining findings and the sentence as reassessed are correct in law and fact, and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the remaining findings and the sentence as reassessed are **AF-FIRMED**.[24]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[24] The court-martial order (CMO) erroneously states the conduct underlying Charge I and its Specification occurred at or near "JBSA-Lackland" and not "San Antonio, Texas" as charged. We direct the publication of a corrected CMO to remedy this error.